IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROGER PESSOA
Plaintiff,

CIVIL ACTION NO.: 8:18-CV-00266-SCB-JSS

v.

INVESCO INVESTMENT
SERVICES, INC.,
Defendant.
_______________________________________/

# SECOND AMENDED COMPLAINT

COMES NOW the Plaintiff, ROGER PESSOA, by and through his undersigned counsel, and sues the Defendant, INVESCO INVESTMENT SERVICES, INC. and alleges:

1. This action is within the jurisdiction of this Court as set forth in 28 USC §1332.

2. The Plaintiff is a resident of Hillsborough County, Florida and is a shareholder of investment product currently held with the Defendant, Invesco Investment Services, Inc., under a systematic investment plan.

3. The Defendant, Invesco Investment Services, Inc., is incorporated under the laws of the State of Texas and has its principal place of business in Houston, Texas.

4. That the amount in controversy being in excess of $75,000.00, not counting interest and costs of court.

5. That on October 17, 1967 the Plaintiff entered into an Investor Agreement with the Bank of New York wherein the Plaintiff over time invested the principal sum of $7,500.00. A

copy of the Investor Agreement is attached hereto as Exhibit "A" and incorporated by referenced herein.

6. That from time to time The BANK of NEW YORK and the subject investment product and related investor agreement was acquired by various entities with the last entity being the Defendant, Invesco Investment Services, Inc..

7. All conditions precedent to bringing this action has been performed.

**COUNT I**
**BREACH OF CONTRACT**

8. The Plaintiff re-alleges paragraphs 1 through 7 as set forth herein in *haec verba.*

9. The Plaintiff has fulfilled all of the terms of the Investor Agreement.

10. The Investor Agreement in relevant part provided that at the end of the period covered by the agreement the Plaintiff would have the right to exercise his option to liquidate his shares from the fund and receive cash proceeds.

11. The Plaintiff has at least since 2014 requested said account to be liquidated and that the cash proceeds therefrom be distributed to him.

12. As of this date Defendant has failed and refused to liquidate the account and to distributed the cash proceeds to the Plaintiff.

13. As a result of the Defendant's conduct, the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment against the Defendant to include but not be limited to prejudgment interest and an award of attorney's fees and costs.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via e-file at jmcfadden@stradley.com and dfitzgibbon@stradely.com to Jeffrey McFadden, Esquire and David Fitzgibbon, Esq., at Stradley Ronon Stevens & Young, LLP, 1250 Connecticut Avenue, N.W., Suite 500, Washington, DC 20036 on this 11th day of May, 2018.

/s/ Tarya A. Tribble
TARYA A. TRIBBLE, ESQUIRE
Tribble Law Center, P.A.
Florida Bar No.: 0165999
6928 U.S. Hwy 301 South
Riverview, Florida 33578
Phone: 813-672-8333
Fax: 813-672-0023
assistant@tribblelawcenterpa.com
lawcenter2000@aol.com
pleadings@tribblelawcenterpa.com
Attorney for Plaintiff

# Investors Planning Corporation of America

INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

## SYSTEMATIC INVESTMENT PLAN

*Initially Issued* XXXXXX Without *Life Insurance*

CERTIFICATE

NO. 199397

[X] 12½ YEAR PLAN ☐ 15 YEAR PLAN ☐ 20 YEAR PLAN

FOR THE ACCUMULATION OF SHARES OF → FUND OF AMERICA, INC. (HEREINAFTER TERMED "THE FUND")

*It is Hereby Certified that*

INVESTORS PLANNING CORPORATION OF AMERICA (hereinafter termed the "Sponsor"), and

ROGER PESSOA
1587 CARROLL ST
BROOKLYN N Y 11213

1 33 31
244B020 2002 00

(hereinafter termed the "Investor"), pursuant to application heretofore made to the Sponsor and accepted by it, have entered into the following agreement:

The Investor having subscribed to the Systematic Investment Plan of the Sponsor for the accumulation of shares of The Fund, hereby appoints THE BANK OF NEW YORK (hereinafter termed the "Custodian") as his Custodian under this Plan, with all the powers and subject to all the terms and conditions hereinafter set forth.

The Investor agrees to pay to the Custodian during the period covered by this Plan sums aggregating $7,500.00
unless the Investor exercises his privilege to terminate and withdraw as hereinafter provided.

Receipt is hereby acknowledged of the initial payment of $100.00

The balance shall be paid in monthly payments of $50.00
each, commencing one month from the date hereof, any or all of which payments may be made in advance and all of which are hereinafter referred to as "Plan payments".

The Investor authorizes and directs the Custodian, upon receipt of each of the aforesaid Plan payments, to make and disburse the deductions hereinafter specified, and to apply the balance of each of said payments to the purchase for the account of the Investor of the shares of capital stock of The Fund, or in the event the substitution provisions of this Plan are made operative as hereinafter provided, to the purchase of the shares thus substituted, all of which are herein referred to as the "fund shares".

It is understood that pursuant to the provisions of the Plan, the Custodian is authorized and directed to deduct and pay over from each of the Investor's specified payments hereunder, the following:

(a) *To the appropriate taxing authorities*, from the first payment only, the amount of any tax imposed on the issuance, delivery or sale of the Plan;

(b) *To the Custodian*, from each of the payments $1.10

(c) *To the Sponsor*, from each of the first twelve payments, inclusive* $25.00

from each of the remaining payments $2.28

(d) *To the insurance companies*, if this Plan is issued with insurance and so long as said insurance remains in effect, the monthly premiums payable with respect to the insurance on the life of the Investor.

*A double initial payment is required on all plans calling for $175 or less systematic payments units. Therefore, on such plans this deduction is applicable to each of the first thirteen payment units.

After having made the foregoing deductions from each of the Plan payments, the Custodian shall promptly invest the balance of each such payment in fund shares at "the net asset value" as officially determined by The Fund (or the issuer of any substituted shares) and without inclusion of any sales charges. The Custodian shall also invest for the account of the Investor, in the same manner and on the same basis, all dividends and other distributions which may from time to time be received on all fund shares held for his account, subject only to the deductions hereinafter specified, unless the Investor elects otherwise pursuant to the options and privileges hereinafter set forth. At the end of the period covered by this agreement or at such earlier time as the Investor determines in conformance with the terms and conditions hereinafter set forth, he shall have he right to receive from the Custodian all fund shares held for his account, or, in the alternative, the Investor may exercise his option to receive the cash proceeds from the liquidation of said fund shares.

All the terms, provisions and conditions set forth on the following pages and in any rider attached thereto and made a part thereof and in the agreement between the Custodian and the Sponsor covering the issuance of the Plans are part of this Plan with the same force and effect as if set forth in full on the face hereof.

*The Plan shall become effective and binding upon the Sponsor, the Investor and the Custodian upon issuance of this Certificate, duly executed by the Sponsor and countersigned by the Custodian, and its deposit in the mails addressed to the Investor at his address stated above.*

IN WITNESS WHEREOF, the Sponsor has caused this Plan to be duly executed and a facsimile of its corporate seal to be hereunto affixed on OCTOBER 17 19 67

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

*The undersigned hereby agrees to perform the functions of the Custodian under this Plan pursuant and subject to the terms and conditions set forth herein.*

THE BANK OF NEW YORK

BY:

Authorized Signature

INVESTORS PLANNING CORPORATION OF AMERICA

BY: Walter Benedick

PRESIDENT

INVESTORS PLANNING CORPORATION OF AMERICA CORPORATE SEAL 1962 DELAWARE

11-88

EXHIBIT A

agreement heretofore set forth is subject to the following options, ges, terms and conditions, all of which shall constitute an integral f the Plan and of the agreement of the parties:

PAYMENTS: Payment shall be made by the Investor promptly when y mail to THE BANK OF NEW YORK, Mutual Funds Department, at York 15, N. Y., or at such other address as the Custodian may from ı time specify to the Investor in writing. The Investor should not at any ıake any of the payments under this Plan to anyone not specifically ized by the Custodian, THE BANK OF NEW YORK, to receive the same.

DIVIDENDS, DISTRIBUTIONS AND PARTICULAR DEDUCTIONS: (a) The lian shall collect all cash dividends and distributions from time to leclared and made upon the fund shares held by the Custodian for vestor's account, and unless the Investor otherwise instructs the Custo- n writing pursuant to the provisions of Article 3(b) of this Plan, the lian shall apply all such cash dividends and distributions, less the it of authorized deductions, if any, to the purchase of additional fund ı for the Investor's account. Any distributions in the form of additional hares shall likewise be credited to the Investor's account, and any utions other than in cash or in fund shares shall be sold by the Cus- at such prices as it may be able to realize therefor and the net ıds applied to the purchase of additional fund shares for the Investor's ıl. In the event that any dividends or distributions shall be payable option of the Custodian or its nominee in either cash or stock or other ty, the Custodian shall elect, as to all fund shares held by it or its ee, to receive such dividends or distributions in cash.

addition to the deductions to be made by the Custodian from the or's payments, as hereinabove set forth on the face of this Plan, the lian is authorized and directed to deduct and pay over from amounts ed as dividends or distributions on the fund shares held for the or's account, the following:

(i) After the twenty-fourth monthly payment has been made, to the Custodian for payment to the Sponsor an amount not exceeding two dollars ($2.00) in any calendar year, for reimbursement of actual expenses incurred by the Sponsor in performing the duties set forth in Article 4(c) of this Plan; except that in the event such duties are assumed by the Custodian pursuant to Article 4(c), it shall be entitled to receive and retain such payment.

(ii) After the expiration of a period of 12½ years from the date of this Plan and the completion of all payments by the Investor contemplated hereunder (or, if the two events do not coincide, then upon the occurrence of the latter of the two) or if during said period the Investor shall have failed to make any payment for a period of one year after the same has becomé due, to the Custodian in payment for its services thereafter as long as the Plan remains in force, an annual charge equal to 2/10 of 1% of the total Plan payments, but not more than $6 within any such annual period.

(iii) Such sums, if any, as the Custodian in its discretion may find necessary or appropriate to pay or reserve for the Investor's pro rata share of tax claims and expenses in connection therewith, as provided in Article 7, and the Investor's pro rata share of actual expenses incurred by the Sponsor or the Custodian in the event of a substitution of fund shares pursuant to Article 8.

ch case the foregoing deductions shall be made from dividends and utions, (with respect to the deduction referred to in (i) then with respect last dividend or distribution in each year), whether the Investor has d to have sáme reinvested or remitted; and to the extent that the tly available dividends or distributions shall be insufficient to defray ıch charge or expense at the time incurred, the Custodian is authorized y the unpaid balance thereof from the proceeds of the sale of fund s held for the Investor's account. Except as specifically provided in rticle 2 or on the face of this Plan, or in any rider attached to and a part of this Plan, there shall be no deductions, charges or fees of ind deducted from or charged against the Plan payments made by the or hereunder, or the fund shares held for the Investor's account, or the nds or distributions thereon.

addition to the deductions to be made by the Custodian from the or's payments, as hereinabove set forth, the Custodian is authorized to t from the proceeds of the sale of fund shares held for the Investor's at (unless such amounts shall have been paid directly to the Custodian Investor at the time of the transaction) the amount of any applicable er taxes and a Custodian charge of $2.50 in the case of each transfer , each partial or complete withdrawal or termination, each reissuance partial liquidation, each recording of an assignment and each com- on of Plans, and a custodian charge of $1.00 in the case of each ation of trust. However, no Custodian charge is payable when the ation of trust is filed with the application for the Plan or when a ation is made after completion of all Plan payments.

OPTIONS AND PRIVILEGES OF THE INVESTOR:

celeration of Payments: The Investor may accelerate the completion payments by making one or more regular monthly payments in ice. In any such case deductions shall be made from such advance ents as though regularly made upon the due date thereof, except that ever an Investor makes a payment during his lifetime aggregating six re monthly payments, he will be entitled to a reduction of 50% in the lian fees with respect to such payments.

mittance of Dividends and Distributions: The Investor may from time e instruct the Custodian to remit to the Investor any cash held by the lian for such Investor as the result of cash dividends or other distribu- on his fund shares less authorized deductions, and may subsequently the Custodian to resume the practice of reinvesting the same. The or's instruction to the Custodian to remit all such cash to the Investor be in writing and shall be applicable only to all cash dividends and utions, the record date for which shall be fixed for a date at least s subsequent to the receipt by the Custodian of such instructions.

mplete Withdrawal or Termination: The Investor may, at any time, ate his Plan by surrendering it to the Custodian for complete with- il and cancellation, with written instructions either to deliver his fund s to him, or to sell as his agent his fund shares and remit the net eds. If the Investor directs the delivery of his fund shares, sufficient s will be sold by the Custodian as agent for the Investor to pay all authorized deductions and transfer taxes and leave no fractional shares, and the net balance will be paid in cash. As provided in Article 2(c) a Custodian's charge of $2.50 will be deducted in connection with complete withdrawal or termination prior to the completion of all Plan payments.

(d) Partial Withdrawal or Partial Liquidation Without Termination: At any time after having made 18 monthly payments or the equivalent thereof, the Investor may without terminating his Plan, withdraw part of his fund shares or direct the Custodian to sell as his agent part of his shares and remit the net proceeds, provided such withdrawal or partial liquidation shall involve not less than $25 of net proceeds of sale and not more than 90% of the fund shares standing to his account. For purposes of computing such 90% all unrestored partial withdrawals and partial liquidations shall be added. No such partial withdrawal or liquidation shall affect the total number of Plan payments to be made by the Investor, the period within which such payments are to be made, or the unpaid balance of Plan payments under this Plan. *At any time after having made a partial withdrawal of fund shares* the Investor shall have the right to replace the same number of shares. At any time after having made a partial liquidation of fund shares the Investor shall have the right to pay to the Custodian to purchase fund shares at net asset value as defined in Article 5 of this Plan a dollar amount equal to the proceeds of the partial liquidation. Shares must be redeposited for shares withdrawn and cash redeposited for cash received on liquidations. In connection with any such withdrawal or partial liquidation of fund shares the Investor shall pay to the Custodian the amount of any transfer taxes, and the Custodian's charge of $2.50 specified in Article 2(c), or the Custodian will deduct amounts as therein provided. Anything in the foregoing to the contrary, notwithstanding, unless the Sponsor, in its sole discretion, agrees thereto and the same are in accordance with the rulings or interpretations of the National Association of Securities Dealers, Inc., which provide that such requests must be in writing and to meet good faith business or personal needs of the Planholder, partial liquidations may not be made more than once a year or within six months after any acquisition of shares under the Plan (other than regular monthly acquisitions) and repurchases may not be effected within 90 days following partial liquidations.

(e) Continuation of Custodianship: After the Investor has completed his Plan payments, the Custodian shall retain custody of his shares and continue to perform all the Custodianship services until the expiration of 20 years from the date of this Plan, unless the Investor at any time prior thereto exercises his option for complete withdrawal or liquidation. At the expiration of the 20 year period the Investor shall have the option to extend the custodianship for an additional 10 year period based upon the then current charges for such services.

During the continuation of the Custodianship the Custodian will reinvest dividends and distributions in purchases of additional fund shares without payment to the Sponsor of any sales charges, and subject only to the particular deductions specified in Article 2(b).

(f) Systematic Withdrawal Account: At any time when Fund shares under a Single Payment Investment Plan or a completed Systematic Investment Plan of either type, or a combination thereof, have a current offering price of $7,500 or more, the Investor *may elect to set up a monthly or quarterly* Systematic Withdrawal Account and, by signing *a form for this purpose* provided by the Custodian or the Sponsor, authorize the Custodian to remit monthly or quarterly payments in a designated amount. Each payment must be not less than $30.00 and upwards in multiples of $10.00, and the Custodian will receive a service charge to be paid by the Investor at the rate of 50 cents per payment in addition to the regular annual Custodian fee. Each check will represent proceeds of the redemption of full and fractional shares, at the then net asset value, to meet the withdrawal payments. Dividends and distributions will be reinvested under a withdrawal account at net asset value. The investor may stop withdrawals or revise the basis and amount of the withdrawa's at any time by written direction to the Custodian. Investors may not simultaneously maintain both an incompleted Systematic Investment Plan of either type and a Systematic Withdrawal Account. Shares liquidated under a Systematic Withdrawal Account may be replaced only with shares purchased at the pub'ic offering price. The minimum amount of any replacement or addition of shares must be equal to three times the amount of the annual withdrawal, unless a partial liquidation is being simultaneously replaced, in which event the total of both replacements may not be less than three times the amount of the annual withdrawal. Any replacement payment made into such an account out of which a partial liquidation has been made will first be applied to the replacment of the partial liquidation.

(g) Combining of Plans: The Investor may, not more than once, in any calendar year, request the Custodian to combine into one account, for the purpose of determining the applicable Custodian Fee based on the aggregate amount, and for the purpose of a single Delegated Duties Fee, completed Systematic Investment Plans of either type and/or Single Payment Investment Plans which are registered identically.

(h) And Investor may reduce the amount of his monthly payment under either type of Systematic Investment Plan by written request to the Sponsor on forms supplied by it. Such reduction in payment and applicable charges will only apply to the remaining unpaid payments under this Plan.

4. *CUSTODIAN'S DUTIES AND FURTHER CONDITIONS OF THE CUSTODIANSHIP:* (a) It shall be the duty of the Custodian to keep records showing the number and amount of payments made by the Investor, the date and amount of all dividends and distributions received by the Custodian on fund shares held for the account of the Investor, all deductions made from such payments, dividends or distributions, the number of fund shares purchased with the net amount of all payments or reinvested dividends and distributions, the number of fund shares sold or withdrawn, and the number of fund shares which from time to time are held for the account of the Investor under this Plan. It shall further be the duty of the Custodian to mail to the Investor a receipt for such payment made which shall also state the number of fund shares owned by him as of the date of such receipt and a reminder notice for the next payment.

(b) The Custodian shall not cease to perform its functions under this Plan or resign as Custodian hereunder unless a substitute has been designated and has accepted such Custodianship, or the Plan has been terminated as herein provided. The Custodian and any successor custodian under this Plan shall be a bank having at all times an aggregate capital, surplus and undivided profits of not less than $1,000,000.

(c) The Custodian has delegated to the Sponsor, and the Sponsor has agreed

orm, the following administrative services: (i) obtain and mail to all
rs under the Plan such prospectuses and periodic reports of financial
ons of the issuer of the fund shares in which the investments are
nade as are required by law or regulation; (ii) obtain and mail to all
rs notices and statements with respect to dividends and other distribu-
n the fund shares and notices of meetings and proxy statements with
to stockholders' meetings of the issuer of said shares; (iii) cause to
pared and mailed to all Investors such tax notices as are required by
regulation to be transmitted periodically to Investors; (iv) cause the
of the books of the Custodian to be made by independent certified
accountants at least annually and more frequently if so required by
regulation; (v) cause the preparation and filing of all reports and
required by law or regulation incident to the existence or operation
Plan and the Custodianship; (vi) answer all inquiries from Investors
ling their Plans. The Custodian has the right to revoke in part or
the foregoing delegation, and in that event the Custodian shall be
i to charge against the dividends and distributions of the Investor the
expenses incurred by it in performing such duties, in the same manner
bject to the same limitations stated in respect of the Sponsor in para-
2(b) (i).

Custodian assumes no duties or obligations not specifically assigned
Custodian by this Plan or stated to have been delegated by it to the
r as set forth in the preceding paragraph. Without limiting the gen-
of the foregoing, the Custodian specifically does not assume the
of investment ordinarily imposed upon a trustee, and its only obliga-
all be to perform its Custodianship duties as specifically set forth in
an. The Custodian shall have no responsibility for the choice of the
nent, for the investment policies of the investment company issuing
nd shares or for any act or omission on the part of such investment
ny or on the part of the Sponsor, and shall have no responsibility for
gistration or qualification of securities, or of any person or company
er or not the issuer of any such securities) under any Federal or state
the law of any other jurisdiction relating to the sale, registration or
cation of securities or under any rules, regulations or orders of any
tory agencies or commissions.

Custodian is authorized to commingle the Investor's payments and
tions (including dividends) with the payments and distributions of
nvestors in the fund shares and the Custodian may deposit said funds
eparate account for such Investors in its own bank. The Custodian is
ized to likewise commingle any or all fund shares purchased for the
r with such fund shares purchased for other Investors in the fund
and to cause the certificates for said fund shares to be registered in
ne as Custodian or in the name of its nominee or nominees. The Cus-
shall, however, keep all fund shares separate and apart from its
ate assets, and shall hold in trust all such fund shares, as well as all
and other property and assets belonging to the Investors or the
lanship.

PURCHASE AND SALE OF SHARES: The Investor authorizes and
the Custodian, after making proper deductions, to purchase, within
isiness days, unless impracticable, from the date upon which it collects
ryments, dividends or other distributions which are to be reinvested,
hares or fractions thereof for his account at "the net asset value" of
nd shares at the time in question, which shall mean the net asset
as officially determined by The Fund as of the applicable date, or by
suer of any substituted fund shares, and shall not include any sales
es.

Investor authorizes and directs the Custodian whenever fund shares
ithorized to be sold or redeemed under the terms of this Plan to tender
und shares to The Fund or its principal distributor (or, in the case of
tuted fund shares, to the issuer or principal distributor thereof) for the
chase at net asset value or alternatively for redemption at the redemp-
alue of the said fund shares as officially determined by such issuer in
lance with the provisions of its Prospectus issued under the Securities
1933; and no deduction shall be made for any sales charge not therein
ied.

ill instances where shares are sold by the Custodian, the Custodian
withdraw the same from the custodianship, as agent for the Investor
as agent for the Investor, is authorized to sell them on behalf of the
or by depositing them in whole or in part with the issuer of the shares
duly authorized agent of the Issuer.

he event of suspension of the right of redemption by The Fund (or the
of any substituted shares) because of the suspension of the business
New York Stock Exchange or for any of the other causes specified in
suer's Prospectus, the Custodian shall defer purchases and sales until
suer or its distributing agent resumes the sale and redemption of fund
s.

VOTING RIGHTS: The Custodian will vote fund shares in accordance
instructions received from the Investor for whose account the fund
s are held. If the Investor desires to attend any meeting at which his
shares may be voted, he may request the Custodian to furnish him
a proxy or otherwise arrange for his exercise of voting rights with
ct to fund shares standing to his account. When requested by the fund,
ustodian shall vote fund shares held under the Plans for which no
ctions have been received in the same proportion as it votes such
s for which it has received instructions. No such request shall be made
e fund, however, if it has knowledge of any contest or in the case of
rger, consolidation or other matter which may affect substantially the
rights of the fund shares.

TAXES: Dividends and other distributions received upon fund shares
for the Investor's account are taxable to him individually. Statements
ing as to the amount and nature of dividends and distributions for each
dar year will be sent by the Custodian or Sponsor to the Investor as
as reasonably available. In connection with the exercise by the Inves-
f options of partial withdrawal or liquidation or complete withdrawal
ermination, as set forth in Article 3, the profits realized by the Investor
e sale of his fund shares may be subject to Federal and State Income
on capital gains and should accordingly be reported in the Investor's
ie tax returns for the year in which such fund shares were sold.

ither the Custodian nor the Sponsor shall themselves bear any portion
y taxes levied or assessed against them or either of them with respect
d shares in the custody of the Custodian pursuant to this Plan or with
ct to any phase of operations of the Custodianship, or the income from
shares or the sale or transfer thereof. The Custodian is authorized to
any expenses, including fees of auditors and counsel, deemed by it
isary or appropriate in connection with any claim or possible claim for
against the Custodianship or the accounts of the Investor. The Custo-
may in its discretion from time to time make deductions, chargeable
ist the accounts of the Investor on a pro rata basis (determined by
reference to the total number of fund shares affected), in order to pay or set up reserves for such claims or possible tax claims and expenses in connection therewith.

8. SUBSTITUTION OF FUND SHARES: Unless the Custodian disapproves, the Sponsor may from time to time whenever it deems it for the best interest of the Investor substitute a new investment medium for the fund shares theretofore employed (such substitution to be made as to fund shares already purchased and to be purchased, or only as to fund shares to be purchased), provided that such substituted fund shares are generally comparable in character and quality to the fund shares theretofore purchased under this Plan, and are shares registered with the Securities and Exchange Commission under the Securities Act of 1933, as amended, so long as that statute remains in force; and further provided that before any substitution may be made, the Sponsor shall:

(a) Give notice of the proposed substitution to the Custodian and first satisfy the Custodian that arrangements have been entered into by the Sponsor which reasonably assure that the new fund shares will be available for purchase by the Custodian and subject to redemption on terms generally as favorable as those applicable to the fund shares currently employed as the investment medium;

(b) Give written notice to the Investor of the proposed substitution, giving a reasonable description of the new fund shares and notifying the Investor that unless he surrenders his Plan to the Custodian for termination within 30 days of the date of such notice, he will be conclusively deemed to have authorized the substitution, and to have agreed to bear his pro rata share of the actual expenses including tax liability incurred by the Custodian and the Sponsor in connection therewith;

(c) In the case of substitution of new fund shares for fund shares already purchased, arrange that the Custodian will be furnished, without payment of sales commissions or fees, with new fund shares having an aggregate value on the basis of their net asset value at least equal to the aggregate value of the old fund shares similarly computed, or computed on the basis of the best available bid price the Custodian is able to obtain for such old fund shares in the event the issuer thereof does not quote the net asset value at the time in question; and

(d) Furnish the Custodian with a certificate signed by the President or Treasurer of the Sponsor, showing that the Sponsor has given notice to the Investor as above provided.

If the Custodian has not received from the Investor within 30 days from the date of the Sponsor's notice, the Investor's Plan with written instructions pursuant to Article 3(c) for a complete withdrawal, the Custodian shall proceed to purchase the new fund shares for the account of the Investor and if the old fund shares are to be exchanged pursuant to the foregoing substitution, the Custodian shall proceed to exchange the old fund shares for the new fund shares and shall within five days thereafter either deliver or mail appropriate notice of such substitution to the Investor. The Custodian is hereby authorized to rely conclusively upon the Sponsor's Certificate referred to above, and it is further authorized to charge against the account of the Investor his pro rata share of the actual expenses including tax liability incurred by the Custodian and the Sponsor in connection with the substitution and to pay over the said amount to them or either of them, as the case may be.

In case the fund shares shall no longer be purchasable by the Custodian for a period of more than 90 days, and the Sponsor fails to substitute other fund shares as above provided, the Custodian is authorized (but not required) to select another medium of investment which in its sole discretion it deems generally comparable to the fund shares theretofore purchased, and to give notice to the Investor of its willingness to purchase such other fund shares on condition that within 30 days the Investor shall give written approval to the Custodian and agree to bear his reasonable pro rata share of the Custodian's expenses including tax liability in connection with such substitution. If the Investor fails within such period of 30 days to give such written approval and agreement, the Custodian may conclusively treat such failure as evidence that the Investor has terminated this Plan, whereupon the Custodian is authorized to follow the procedure specified in Article 9 below in case of termination.

In the event that fund shares are no longer purchasable for a period of more than 90 days, and neither the Sponsor nor the Custodian substitutes other fund shares, it shall be conclusively presumed that it is necessary to terminate this Plan, and in such event the Custodian is authorized to follow the procedure specified in Article 9 below in case of termination.

9. TERMINATION BY THE SPONSOR OR CUSTODIAN: So long as the Investor continues to make his Plan payments, neither the Sponsor nor the Custodian may terminate this Plan until the expiration of twenty years from the date of issuance, or until the expiration of 30 years from the date of issuance of the Plan if the Investor has exercised the option to extend the custodianship, except in the contingencies set forth in the last two paragraphs of the preceding article. However, in the event the Investor fails to make any payment for a period of one year after the same becomes due, his Plan shall be considered in a state of delinquency, and thereupon either the Sponsor or the Custodian may terminate the Plan by following the procedure specified below in case of termination. Any payment made and accepted prior to termination extends the due dates of all future payments for a period equal to the period during which no payment was made.

Neither the Sponsor nor the Custodian shall have the right (except in the contingencies specified in the last two paragraphs of Article 8 and the preceding paragraph of this Article 9) to terminate this Plan until the expiration of twenty years from the date of issuance of the Plan or until the expiration of 30 years from the date of issuance of the Plan if the Investor has exercised the option to extend the custodianship, but thereafter either the Custodian or the Sponsor may elect to notify the Investor that he is required to terminate the Custodianship by instructing the Custodian either to deliver the fund shares or to sell the same as agent of the Investor and remit the proceeds according to the procedure specified in Article 3(c) with respect to the option of complete withdrawal and termination; and in the event he does not proceed accordingly within 60 days after the sending of such notice, the Custodian is authorized in its discretion to, as agent of the Investor, (a) sell all the fund shares standing in the Investor's account and after making any authorized deductions, hold the balance of the proceeds for the Investor's account, or (b) sell sufficient fund shares standing in the Investor's account to pay all authorized deductions and leave no fractional shares and transfer the full fund shares into the name of the Investor. Upon surrender of the Plan to the Custodian it will deliver to the Investor his full fund shares and any balance of cash or if all fund shares have been sold the net proceeds thereof less authorized deductions. No interest will be pay-

› surrender of the Plan, and the Custodian may in its discretion if the
vestor fails to surrender this Plan for a period of sixty days after the [illegible]
y of the termination notice referred to above, mail to him at his address
ted upon its records, its check for all cash standing to his credit and such
ıd shares, if any, which have been transferred to his name as aforesaid
d in the event the fund shares and/or any cash balance are not delivered
the Investor, the Custodian will hold the same in trust, subject to appli-
ble state law.

10. ASSIGNMENT: This Plan shall be assignable under the following
ıditions:

'he Investor may (a) assign his right, title and interest in his fund shares
a bank or other lending institution, in which event the Custodian will,
›n the request of the assignee record such assignment until the assignee
ıll have notified the Custodian that the assignment has been released,
no such assignment shall be binding upon the Custodian, unless this
n shall be delivered into the custody of and shall remain in the custody
such bank or lending institution until the rights thereunder are exercised
such bank or lending institution or until such assignment has been
'ased. During the term of the assignment the Investor shall continue to
entitled to all dividends and distributions on his fund shares and the
ignee shall not be entitled to exercise the provision of partial withdrawal
liquidation but only complete withdrawal and termination as provided in
icle 3(c); (b) transfer his right, title and interest in and to his fund shares

[illegible]
his right, title and interest in and to his fund shares to another person whose
only right shall be to promptly exercise the option of complete withdrawal
pursuant to Article 3(c); or (d) execute and file with the Custodian an
appropriate Declaration of Trust or similar instrument declaring that he holds
his Plan, and his interest in the fund shares applicable thereto, for the
benefit of a specified other person or persons. No transfer of the Investor's
right, title and interest to his Plan or the fund shares applicable thereto shall
be binding upon the Custodian or the Sponsor, except as above provided
and in accordance with appropriate instruments of transfer, and until the
Custodian charge provided in Article 2(c) and any applicable transfer taxes,
shall have been paid; and until the Custodian and the Sponsor shall have
permitted such transfer to be effective, they may treat the Investor as the
sole and absolute owner of the Plan and the fund shares applicable thereto.

11. NOTICES: Any notice, report or document required or authorised herein to be given or sent to the Investor shall be conclusively deemed to have been given or sent when deposited in the mail, postage prepaid, addressed to the Investor at his address as noted upon the records of the Custodian; and the date of the mailing of any such notice shall be deemed the date of the giving of such notice.

12. MODIFICATION OR ALTERATIONS OF TERMS OF THE PLAN: No agent or other person has the authority to modify, alter or otherwise change the terms of this Plan, or to bind the Sponsor, the Custodian or the issuer of the fund shares by any statement, written or oral, not contained herein.

IPC